FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 17, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEBBIE H.,[1]<br>           Plaintiff,<br><br>   vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>          Defendant. | No. 4:18-cv-05090-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 17, 21 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 17, 21. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 17, and grants Defendant's Motion, ECF No. 21.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On March 11, 2014, Plaintiff applied for Title II disability insurance benefits, alleging a disability onset date of December 30, 2010. Tr. 260-66. The application was denied initially, Tr. 175-81, and on reconsideration, Tr. 183-87. Plaintiff appeared in person at a hearing before an administrative law judge (ALJ) on June 10, 2016. Tr. 64-105. Plaintiff appeared by video at a supplemental hearing before the same ALJ on November 10, 2016. Tr. 106-42. On December 28, 2016, the ALJ denied Plaintiff's Title II claim.[2] Tr. 13-35.

---

[2] Plaintiff filed an application for Title XVI supplemental security income benefits on September 23, 2014. Tr. 267-73. The ALJ's December 28, 2016 decision only applies to Plaintiff's Title II application. Tr. 16. On December 22, 2016, in a separate decision, the ALJ dismissed Plaintiff's Title XVI application and remanded it to the District and/or Field Office with direction to treat the application as pending at the initial level and to process separately. Tr. 16, 36-40.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of December 30, 2010, through her date last insured of September 30, 2013. Tr. 18. At step two, the ALJ found Plaintiff had the following severe impairment: a hernia. Tr. 19. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 21. The ALJ then concluded that Plaintiff had the RFC to perform sedentary work with the following limitations:

> [Plaintiff] can occasionally balance; never climb, stoop, kneel, crouch, or crawl; and must avoid concentrated exposure to vibrations and hazards.

Tr. 21.

At step four, the ALJ found Plaintiff was able to perform her past relevant work as a bookkeeper, receptionist, and accounting clerk, as generally found in the national economy, and as she actually performed the jobs.[3] Tr. 28-29. On that

_____

[3] The Court notes that there is a typographical error in paragraph six of the ALJ's decision. Tr. 28. The ALJ first stated that Plaintiff was capable of performing past relevant work as a bookkeeper, receptionist, and general office clerk. Tr. 28. The ALJ appears to have mistakenly noted that Plaintiff was capable of performing her past relevant work as a general office clerk, and instead actually determined that

basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from December 30, 2010, the alleged onset date, through September 30, 2013, the date last insured.  Tr. 29.

On April 6, 2018, the Appeals Council denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability income benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly evaluated Plaintiff's impairments at step two;

2.  Whether the ALJ properly weighed the medical opinion evidence;

3.  Whether the ALJ properly considered Plaintiff's symptom claims;

---

Plaintiff was capable of performing her past relevant work as an accounting clerk, as the ALJ lists the job of accounting clerk and not general office clerk in his subsequent discussion.  Tr. 28-29, 136.  Further, the vocational expert testified that Plaintiff's RFC would allow her to perform her prior sedentary jobs (bookkeeper, receptionist, and accounting clerk), but would preclude her past relevant work as a general clerk.  Tr. 136.

ORDER - 8

4. Whether the ALJ properly evaluated lay witness statements; and

5. Whether the ALJ made a proper step four/step five determination.

ECF No. 17 at 5.

## DISCUSSION

### A. Step Two

Plaintiff contends the ALJ erred by failing to identify a number of conditions as severe impairments at step two. ECF No. 17 at 13-14.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 404.1508.[4]

---

[4] As of March 27, 2017, 20 C.F.R. § 404.1508 was removed and reserved and 20 C.F.R. § 404.1521 was revised to define what constitutes a medically determinable impairment. The Court applies the version that was in effect at the time of the ALJ's decision.

ORDER - 9

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work...." Social Security Ruling (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521 (1985);[5] SSR 85-28 at *3.[6]

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical

---

[5] As of March 27, 2017, 20 C.F.R. § 404.1521 was amended. The Court applies the version that was in effect at the time of the ALJ's decision.

[6] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

ORDER - 10

evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ concluded that Plaintiff's hernia was a severe impairment. Tr. 19. The ALJ also concluded that Plaintiff had the following non-severe impairments: coronary artery disease, hypertension, type 2 diabetes, and depression/dysthymic disorder. Tr. 19-21. After detailing the medical evidence pertaining to these impairments, the ALJ concluded these impairments did not more than minimally impact Plaintiff's ability to perform basic work activities. Tr. 19-21, 24-27.

Plaintiff contends the ALJ should have determined that the non-severe impairments were severe, as well as the following additional conditions: cardiomegaly, congestive heart failure, hyperlipidemia, spondylosis, chronic low back pain, and knee pain. ECF No. 17 at 13-14. Plaintiff cites treatment notes where these conditions were diagnosed, observed, or reported. *Id.* However, the "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Plaintiff identifies no evidence in the record that coronary artery disease, hyperlipidemia, type 2 diabetes, or knee pain have any impact on her basic work abilities. ECF No.

17 at 13-14.  Therefore, Plaintiff has failed to establish that these were severe impairments.

Plaintiff alleges her hypertension, cardiomegaly, and congestive heart failure caused shortness of breath, chest pain, and fatigue, which resulted in exertional limitations.  ECF No. 17 at 13.  She also alleges her spondylosis and chronic low back pain resulted in exertional, postural, and manipulative limitations.  ECF No. 17 at 13.  Plaintiff does not elaborate on what type of exertional, postural, or manipulative limitations she experienced as a result of these impairments, nor does she argue that the ALJ failed to account for these alleged limitations in formulating an RFC that limited Plaintiff to sedentary work with additional restrictions. Plaintiff has failed to establish that these were severe impairments.

Further, Plaintiff alleges her depression/dysthymic disorder resulted in concentration deficits.  ECF No. 17 at 13.  The ALJ concluded the record did not support that Plaintiff's affective disorder (depression/dysthymic disorder) caused more than minimal limitation on Plaintiff's ability to perform basic mental work activities and was therefore non-severe.  Tr. 19.  The ALJ determined that Plaintiff's treatment for her affective disorder was routine and conservative, yet still effective, and that treatment notes did not support a severe mental impairment. Tr. 20; *see* Tr. 282, 426, 430 (August 2006 and March 2007: Plaintiff was taking Zoloft antidepressant medication and despite this, she was able to engage in work

activity at the time, and even described her job as stressful); Tr. 421-22 (The ALJ noted that the medication was generally effective at controlling Plaintiff's moods, although she required an increase in dosage in October 2008); Tr. 536 (March 2011: Plaintiff presented at a consultative examination as alert and oriented with intact cognition testing and ability to follow directions and speak well); Tr. 582 (October 2011: Plaintiff's depression was noted to be stable, and she continued taking Zoloft); Tr. 566 (November 2012: Plaintiff's medication list showed Zoloft at a reduced dosage level from October 2008); Tr. 563-66 (November 2012: Plaintiff reported that her depression was stable, she denied any suicidal ideation, anxiety, depression, memory impairment, or insomnia, and mental status examination was normal); Tr. 567-72 (January 2014: Plaintiff's dysthymic disorder was stable and mental status examination was again normal). Plaintiff's primary care clinician assessed her mental impairment as dysthymia, rather than the previously noted depression, but the ALJ stated that he fully considered Plaintiff's affective disorder as a whole when formulating the RFC. Tr. 20, 565. Although Plaintiff alleged that she suffered from depression and panic attacks, Tr. 336, she did not testify as to any symptoms or limitations from mental impairments at the administrative hearing.

The ALJ specifically addressed the functional area of concentration, persistence, or pace as it related to Plaintiff's depression and dysthymic disorder.

Tr. 19-20. The ALJ determined that Plaintiff had only mild limitation in this area. Tr. 19. The ALJ noted that Plaintiff alleged difficulty concentrating, handling stress, and completing tasks, although these limitations were partly alleged due to her physical symptoms of pain. Tr. 19-20, 364-65. The ALJ indicated that Plaintiff was able to follow written and spoken instructions and handle changes in routine, and she was able to engage in activities such as reading, driving, and handling finances, which required some significant concentration. Tr. 20. Further, the ALJ noted that on mental status examination, Plaintiff exhibited intact memory and full orientation. Tr. 20 (citing 563-566).

Plaintiff, who bears the burden of proving severity and harmful error, cites no specific evidence or meaningful argument in support of the claim that the ALJ erred at step two. ECF No. 15 at 13-14. Plaintiff has identified no evidence indicating that these conditions more than minimally impact her ability to perform basic work activities. A mere recitation of medical diagnoses does not demonstrate how each of the conditions impacts Plaintiff's ability to engage in basic work activities. Thus, Plaintiff has not demonstrated that the ALJ erred. Moreover, Plaintiff's contention lacks merit. As Plaintiff was found to have a severe impairment, this case was not resolved at step two. If there was any error in the ALJ's finding at step two, it is harmless as all impairments, both severe and non-severe, were considered in the determination of Plaintiff's residual functional

ORDER - 14

capacity.[7] *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Plaintiff makes no

showing that any of the conditions mentioned create limitations not already

accounted for in the RFC. *See Shinseki*, 556 U.S. at 409-10 (the party challenging

the ALJ's decision bears the burden of showing harm). There was no error in the

step two analysis and Plaintiff is not entitled to remand on these grounds.

### B.    Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting her symptom claims. ECF No. 17 at 15-16. An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.[8] SSR 16–3p, 2016 WL 1119029, at *2.

---

[7] The ALJ stated, "I have consider[ed] the limiting effects of all impairment[s],

even those that are not severe, in determining [Plaintiff's] residual functional

capacity. 20 CRF [§] 404.1545(e)." Tr. 24, fn 1.

[8] At the time of the ALJ's decision in December 2016, the regulation that governed

the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-4p

effective March 24, 2016. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms

in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016). The ALJ's

decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded

effective June 14, 2018, in favor of the more comprehensive SSR 16-3p.

"First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. Tr. 22.

### 1. Lack of Supporting Medical Opinion Evidence

First, the ALJ found Plaintiff's symptom complaints were not supported by the medical evidence. Tr. 23. An ALJ may not discredit a claimant's symptom

testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor. *Burch*, 400 F.3d at 680.

Here, the ALJ noted Plaintiff testified to symptoms that limited her ability to work, such as constant abdominal pain from her hernia and congestive heart failure which required her to "take it easy." Tr. 22. Plaintiff asserts that the ALJ's conclusion regarding Plaintiff's symptom claims was not supported by the record. ECF 17 at 16. However, in finding there was "little clear evidence that a hernia was even causing major abdominal pain symptoms," the ALJ noted that the treatment notes prior to the date last insured did not support Plaintiff's allegations. Tr. 23-24; *see* Tr. 575-85 (Plaintiff had primary care visits from January 2011 through February 2012, but she was not presenting frequently to the office for acute or severe symptoms); Tr. 561-62 (May 2012: upon presenting to the urgent care clinic due to abdominal hernia pain and a severe tooth abscess, Plaintiff reported she had been having abdominal pain for only the past five days); Tr. 561

(on examination at the urgent care clinic, Plaintiff demonstrated a large bulge near the umbilicus with pain, which did reduce when lying flat, and Plaintiff had a hernia belt which she wore "at times," but she was not wearing the belt when she presented to the clinic); Tr. 563-65 (November 2012: at a primary care visit, Plaintiff reported low back and knee pain, but her last refill of hydrocodone narcotic pain medication was at the beginning of the year, Plaintiff denied any abdominal pain or any other gastrointestinal symptoms, and an abdominal examination showed no distention and no abdominal tenderness).

The ALJ also considered the medical evidence of record after Plaintiff's date last insured in order to determine if any of the evidence could provide an inference that Plaintiff's impairments were actually worse prior to the date last insured than suggested by the records available during that time. Tr. 23. The ALJ noted the significance of treatment notes from January 2014, when Plaintiff re-established care with a primary care provider approximately three and a half months after the date last insured. Tr. 23; *see* Tr. 567-72 (Plaintiff did not report any hernia symptoms at the visit); Tr. 568, 571 (examination revealed a large ventral hernia and her provider observed that the condition was stable, asymptomatic, and nonprogressive); Tr. 570 (other abdominal findings were benign, including no abdominal distention); Tr. 568-71 (Plaintiff noted that she would get hernia surgery when she obtained medical insurance, but she denied any abdominal pain).

Further, the ALJ noted that the medical expert reviewed the entire medical record and testified that although a hernia was detected in May 2012, it was not causing regular symptoms and Plaintiff did not start presenting with significant symptoms requiring surgical intervention until approximately September 2014. Tr. 22, 116, 618-33.

Plaintiff also testified that she had to take it easy due to her cardiac impairment. Tr. 25, 91-92. However, the ALJ noted that with respect to her heart disease, Plaintiff reported that she had been doing well for the last three years on her cardiac medications, she had been physically active, and she denied any associated symptoms such as chest pains, fatigue, or shortness of breath. Tr. 25, 567-68. Moreover, the ALJ noted that cardiopulmonary examination results remained benign. Tr. 25, 570. Her primary care provider observed that Plaintiff was "asymptomatic" and "doing well," so her cardiac medications were continued. Tr. 571. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the ALJ's interpretation of the record is reasonable as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal

quotation marks omitted).  Based on this record, the ALJ reasonably concluded

that Plaintiff's allegations of complete disability were not supported by the medical

evidence in the record.  This finding is supported by substantial evidence.

### 2. Daily Activities

Second, the ALJ found Plaintiff's daily activities were inconsistent with the

level of impairment Plaintiff alleged.  Tr. 26.  The ALJ may consider a claimant's

activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a

claimant can spend a substantial part of the day engaged in pursuits involving the

performance of exertional or nonexertional functions, the ALJ may find these

activities inconsistent with the reported disabling symptoms.  *Fair v. Bowen*, 885

F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.  "While a claimant need

not vegetate in a dark room in order to be eligible for benefits, the ALJ may

discount a claimant's symptom claims when the claimant reports participation in

everyday activities indicating capacities that are transferable to a work setting" or

when activities "contradict claims of a totally debilitating impairment."  *Molina*,

674 F.3d at 1112-13.

Here, the ALJ noted Plaintiff testified that she was unable to work secondary

to constant abdominal pain from her hernia, and the only alleviating factor was to

lie down for unpredictable lengths of time, from 15 minutes to three hours, which

would occur approximately three to five days per week.  Tr. 22, 85, 89.  The ALJ

also cited Plaintiff's testimony that her hernia was exacerbated by walking short distances.  Tr. 22, 89.  The ALJ then summarized Plaintiff's daily activities, including caring for and raising her daughter which "in and of itself, can be just about a full-time job," engaging in volunteer work at her daughter's school, including volunteering for special events and working in the kitchen, taking her daughter to school and picking her up often, transferring her daughter to extracurricular events and helping her "quite a bit" with schoolwork, engaging in some work activity and maintenance around her landlady's property for a rent reduction, including "a lot of weed eating," remaining generally independent with activities of daily living, performing light housework, driving, handling personal care, shopping in stores, handling finances, and reading for two to three hours per day.  Tr. 26; *see* Tr. 79-80, 83, 95, 298-301, 359-61.  The ALJ referenced Plaintiff's testimony that at the time of the administrative hearing she was helping to partially take care of her ex-husband, an activity that allegedly did not begin until after her date last insured, yet in her Function Report as early as March 2014, Plaintiff reported that she had to help take care of her husband as he was unable to walk more than 20 feet due to extreme chronic obstructive pulmonary disease (COPD).  Tr. 26, 78, 356-58.  The ALJ also noted that Plaintiff testified she never stopped looking for work that did not require physical effort, which included searching for jobs as manager, cashier, or bookkeeper.  Tr. 26, 84.  The ALJ's

finding that Plaintiff's daily activities were inconsistent with her specific alleged

limitations is supported by substantial evidence.

### 3. Conservative Treatment

Third, the ALJ found Plaintiff's conservative treatment was inconsistent

with the level of impairment Plaintiff alleged. Tr. 23. Evidence of "conservative

treatment" is sufficient to discount a claimant's testimony regarding the severity of

an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson

v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-

counter pain medication is evidence of conservative treatment sufficient to

discount a claimant's testimony regarding the severity of an impairment)); *see also

Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ

permissibly inferred that the claimant's "pain was not as all-disabling as he

reported in light of the fact that he did not seek an aggressive treatment program"

and "responded favorably to conservative treatment including physical therapy and

the use of anti-inflammatory medication, a transcutaneous electrical nerve

stimulation unit, and a lumbosacral corset"). Here, the ALJ stated that he would

not consider Plaintiff's lack of treatment against her when evaluating her symptom

claims, as Plaintiff's limited treatment for her hernia due to lack of insurance was

indicated in the record. Tr. 23; *see Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir.

1995) (disability benefits may not be denied because of the claimant's failure to

ORDER - 23

obtain treatment he cannot afford for lack of funds). However, the ALJ observed that although Plaintiff alleged that she was unable to work due to constant abdominal pain caused by her hernia, Tr. 85, 89, 93, she was not prescribed any pain medications for abdominal pain despite intermittent prescriptions for a narcotic and muscle relaxant medication for back pain. Tr. 23, 563. Further, although Plaintiff had a hernia belt, she only wore it "at times." Tr. 23, 561. The ALJ's finding that conservative treatment was inconsistent with Plaintiff's alleged limitations is supported by substantial evidence.

## C.    Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Gayle A. Humm, M.D., Jennifer Charron, M.D., Brandon Bunnage, D.O., and Wing Chau, M.D. ECF No. 15 at 7-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations

give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–31). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews*, 53 F.3d at 1041.

*1. Dr. Humm*

Board-certified general surgeon Gayle A. Humm, M.D., reviewed the entire medical record and testified at the administrative hearing. Tr. 113-125. After reviewing the May 2012 CT examination results and treatment notes from

Plaintiff's primary care provider, Dr. Humm testified that she did not get the impression based on the medical evidence that Plaintiff's hernia was a significant impairment during the relevant time period. Tr. 116-17. Dr. Humm opined that Plaintiff began presenting with significant hernia symptoms around September 2014, as the medical evidence revealed she was having more complaints of abdominal pain and it became more limiting. Tr. 116, 118. Dr. Humm opined that Plaintiff would be able to occasionally lift 20 pounds and stand and walk about two hours in an eight-hour day, for 30 minutes at a time. Tr. 117-18. Dr. Humm opined that Plaintiff would be limited to light exertional level work, both before and after her date last insured. Tr. 118-19, 124. The ALJ gave Dr. Humm's opinion significant weight. Tr. 26.

Plaintiff contends the ALJ erred by giving significant weight to the opinion of Dr. Humm, a reviewing physician, and little weight to Plaintiff's treating and examining providers. ECF No. 17 at 9-10, 12. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v.*

*Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

The ALJ found that the opinion of Dr. Humm was consistent with Plaintiff's medical records and reported activities. Tr. 26-27. Plaintiff suggests the ALJ should have credited the opinions of Plaintiff's treating and examining providers over the opinion of the reviewing doctor. However, as discussed *infra*, the ALJ provided legally sufficient reasons for giving less weight to the opinions of the treating and examining providers and for giving more weight to Dr. Humm's opinion.

### 2. Dr. Charron

Plaintiff's primary care physician, Jennifer Charron, M.D., completed a medical report on December 31, 2015. Tr. 732-34. Dr. Charron noted that her treatment of Plaintiff began with an initial surgical consultation for an incarcerated

hernia on November 25, 2014.  Tr. 732.  She described Plaintiff's symptoms as abdominal pain that became worse with movement and she diagnosed Plaintiff with an incarcerated umbilical hernia with continued abdominal pain.  Tr. 732.  Dr. Charron opined that Plaintiff had to lie down during the day to help with pain, although she did not provide specifics as to how long or how many times per day Plaintiff would have to lie down.  Tr. 732.  She also opined that if Plaintiff was attempting to work a 40-hour per week schedule, it was more probable than not that she would miss an average of four or more days per month due to her medical impairments.  Tr. 733.  Dr. Charron concluded that Plaintiff was severely limited and thus unable to lift at least two pounds or unable to stand and/or walk.  Tr. 733.  She noted that these limitations had existed since at least October 2014.  Tr. 734.

The ALJ gave Dr. Charron's opinion little weight.  Tr. 27.  Because Dr. Charron's opinion was contradicted by the nonexamining opinion of Dr. Humm, Tr. 112-125, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Charron's opinion.  *Bayliss*, 427 F.3d at 1216.

      a.     Opinion Outside Relevant Time Period

First, the ALJ found that Dr. Charron's opinion was outside the relevant time period.  Tr. 27-28.  Evidence from outside the relevant period in a case is of limited relevance.  *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165; *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (date

of social worker's opinion, rendered outside the relevant period between the alleged onset date and the date last insured, was a germane reason to not address the opinion). Plaintiff's date last insured was September 30, 2013. Tr. 18. The ALJ determined that the record showed Plaintiff reported worsening of her hernia symptoms around September 2014, one year after the date last insured. Tr. 28, 618-33. Dr. Charron noted that Plaintiff's limitations had existed since at least October 2014, one month after the evidence showed that her symptoms increased. Tr. 732-34. Plaintiff asserts that Dr. Charron's opinion is relevant to establishing whether Plaintiff's impairments existed prior to the date last insured, asserting that the record demonstrates her hernia had progressed to requiring surgical intervention as of May 24, 2012. ECF No. 17 at 9 (citing Tr. 573). However, Dr. Charron's medical opinion that Plaintiff's limitations existed since at least October 2014 comports with the medical expert's opinion and the treatment notes which showed a worsening of Plaintiff's hernia symptoms one month earlier, in September 2014. Tr. 116-18, 618-33. The medical expert testified that the May 2012 CT results did not show Plaintiff's hernia to be a significant impairment at that time. Tr. 116-18. Thus, Dr. Charron's opinion fails to establish whether the opined limitations existed prior to September 30, 2013. The ALJ reasonably found Dr. Charron's opinion was entitled to less weight because it focused on Plaintiff's limitations after the date last insured and other evidence in the record revealed that

Plaintiff's hernia symptoms became worse around September 2014. Tr. 27-28. This was a specific and legitimate reason to discredit Dr. Charron's opinion.

b. Inconsistent with Daily Activities

Second, the ALJ found that Dr. Charron's opinion was inconsistent with Plaintiff's activities during the relevant time period. Tr. 26-27. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Here, the ALJ observed that although Dr. Charron opined Plaintiff was unable to lift at least two pounds or stand and/or walk, Plaintiff was able to engage in relatively normal activities. Tr. 26-27; *see* Tr. 79-80, 83 (Plaintiff testified she would engage in some work activity and maintenance around her landlady's property for a rent reduction, including "a lot of weed eating,"); Tr. 83 (Plaintiff testified that she raised her daughter, which "in and of itself, can be just about a full-time job"); Tr. 83 (Plaintiff testified that she did volunteer work at her daughter's school, including volunteering for special events and working in the kitchen); Tr. 95, 298 (Plaintiff reported that she took her daughter to school and picked her up often); Tr. 95 (Plaintiff testified that she would have to transfer her daughter to extracurricular events and helped her "quite a bit" with schoolwork); Tr. 84 (Plaintiff testified she never stopped looking for work that did not require physical effort, which included looking for jobs as manager, cashier, or

bookkeeper); Tr. 298-301, 359-61 (Plaintiff reported she was generally independent with activities of daily living, and received some assistance from her daughter when able); Tr. 298-301 (Plaintiff reported she was able to do light housework, drive, handle personal care, go shopping in stores, handle finances, and read for two to three hours per day). Plaintiff also reported in her March 2014 Function Report that she helped take care of her husband who suffered from extreme COPD and was unable to walk more than 20 feet. Tr. 356-58. The ALJ reasonably concluded that the record documented activities that were inconsistent with Dr. Charron's opinion that Plaintiff was unable to lift at least two pounds or stand and/or walk. This finding is supported by substantial evidence.

### c. Inconsistent with Medical Evidence

Third, the ALJ found that Dr. Charron's opinion was inconsistent with the otherwise generally normal physical examinations. Tr. 28. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028,

1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ

may choose to give more weight to an opinion that is more consistent with the

evidence in the record. 20 C.F.R. § 404.1527(c)(4) (2012) ("the more consistent a

medical opinion is with the record as a whole, the more weight we will give to that

medical opinion"). Here, Dr. Charron opined that Plaintiff's limitations were

attributable to abdominal pain caused by Plaintiff's hernia. Tr. 733. However, the

ALJ found that the record contained generally normal physical examinations

showing normal gait and full strength, which weighed against the very extreme

limitation of the inability to lift a mere two pounds or not walk at all. Tr. 28, 564.

The record showed that Plaintiff's complaints were precipitated by an acute

worsening of symptoms in September 2014, which does not support the

longitudinal severity alleged by Plaintiff. Tr. 24, 618-33. The ALJ also indicated

that the medical expert reviewed the entire medical record and testified that

although a hernia was detected in May 2012, it was not causing regular symptoms

in that it did not need surgical intervention until September 2014. Tr. 22, 116.

Further, the ALJ observed the treatment notes showed no indication that Plaintiff

reported a need to lie down as frequently as alleged. Tr. 24. Based on this record,

the ALJ reasonably concluded that there was insufficient evidence of longitudinal

hernia symptoms to support Dr. Charron's opinion that Plaintiff had such extreme

limitations during the relevant time period.

d.    Credit Reviewing Source Over Treating Source

Finally, the ALJ discounted Dr. Charron's opinion because it was inconsistent with the opinion of the reviewing medical expert, Dr. Humm, to whose opinion the ALJ assigned significant weight. Tr. 26, 28. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041. Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a nonexamining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the nonexamining doctor's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 751-55. Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

After comparing Dr. Charron's opinion with Dr. Humm's opinion, and considering the entire record, the Court concludes the ALJ's weighing of these two doctors' opinions is supported by substantial evidence. As to Dr. Humm, she reviewed the entire medical record, except for two exhibits that the ALJ clarified were optical records and not relevant to Dr. Humm's area of expertise. Tr. 26,

113. Dr. Humm is a board-certified general surgeon, and she evaluates hernias and performs hernia surgery. Tr. 26. The ALJ determined that Dr. Humm's opinion was consistent with the longitudinal record, which showed that although Plaintiff did have a hernia during the relevant time period, the evidence did not support the frequency and severity of pain alleged by Plaintiff. Tr. 26; *see* Tr. 561 (Plaintiff was not always compliant with wearing a hernia belt); Tr. 438 (November 2010: an abdominal examination was normal at a primary care visit one month before the alleged onset date). Dr. Humm also considered the severity of Plaintiff's condition as of September 2014, after the date last insured, and testified that the opined RFC was still consistent with findings at that time. Tr. 26, 116-119, 123-24. Dr. Humm's opinion is generally supported by Plaintiff's level of activities of daily living during the relevant time period. Tr. 26-27; *see* Tr. 83 (Plaintiff took care of her minor child); Tr. 83 (Plaintiff did volunteer work at her daughter's school); Tr. 79-80, 83 (Plaintiff engaged in some work activity and maintenance around her landlady's property); Tr. 84 (Plaintiff searched for jobs that are generally performed at the light and/or sedentary level).

The ALJ's finding that Dr. Charron's opinion merited less weight than Dr. Humm's opinion because Dr. Humm's opinion was a specific assessment of Plaintiff's functional capacity prior to the date last insured, is supported by substantial evidence. Tr. 28. It is the ALJ's responsibility to resolve conflicts in

the medical evidence. *Andrews*, 53 F.3d at 1039. This was a specific and legitimate reason to credit Dr. Humm's opinion over Dr. Charron's opinion.

### 3. Dr. Bunnage

Plaintiff's hernia surgeon, Brandon Bunnage, M.D., completed a medical report on July 7, 2016. Tr. 806-07. Dr. Bunnage noted that his treatment of Plaintiff began in September 2014. Tr. 806. He reported that Plaintiff had abdominal pain symptoms and diagnosed Plaintiff with an incisional ventral hernia. Tr. 806. He also noted that Plaintiff had abdominal pain from her incisional hernia, which had improved, but now she had diarrhea. Tr. 806. Dr. Bunnage reported that Plaintiff's abdominal pain had been present since 2013, and it had been a long recovery but she had improved. Tr. 807. However, he noted that Plaintiff's diarrhea began after her surgery in 2014 and had been intractable since that time. Tr. 807. He stated that intractable diarrhea was not his area of expertise and Plaintiff had been referred to a gastrointestinal specialist. Tr. 806. Dr. Bunnage opined that Plaintiff had to lie down during the day, although he did not provide specifics as to how long or how many times per day she would have to lie down. Tr. 806. He also opined that if Plaintiff was attempting to work a 40-hour per week schedule, it was more probable than not that she would miss an average of four or more days per month due to intractable diarrhea. Tr. 806. He

stated that Plaintiff's limitations had existed since at least September 30, 2013, her date last insured. Tr. 806.

The ALJ gave Dr. Bunnage's opinion little weight. Tr. 28. Because Dr. Bunnage's opinion was contradicted by the nonexamining opinion of Dr. Humm, Tr. 112-25, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Bunnage's opinion. *Bayliss*, 427 F.3d at 1216.

### a. Opinion Outside Relevant Time Period

The ALJ first noted that Dr. Bunnage's opinion was rendered after the date last insured. Tr. 28. Evidence from outside the relevant period in a case is of limited relevance. *Carmickle*, 533 F.3d at 1165. Plaintiff's date last insured was September 30, 2013, Tr. 18, and Dr. Bunnage began treating Plaintiff one year later, in September 2014, Tr. 28. However, Dr. Bunnage indicated that it was more likely than not that the limitations he assessed existed as of at least September 30, 2013, which corresponds to the date last insured. To the extent that the ALJ relied on the date the opinion was rendered to reject the opinion, this finding is not supported by substance evidence.

Although an opinion rendered after Plaintiff's date last insured may be relevant to a determination of Plaintiff's limitations during the time period at issue, the ALJ further identified concerns regarding the basis to support Dr. Bunnage's opinion as to limitations prior to September 2014, when he began treating Plaintiff.

An ALJ may reject a medical opinion if it is conclusory, inadequately supported, or not supported by the record.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957; *Batson*, 359 F.3d at 1195  Here, the ALJ determined that Dr. Bunnage's opinions as to Plaintiff's limitations during the relevant time period could only be based on speculation and/or Plaintiff's subjective statements, as there was no indication that he reviewed all of the longitudinal medical records (as Dr. Humm did), and he did not begin treating Plaintiff until one year after the date last insured.  Tr. 28.  Further, the ALJ indicated Dr. Bunnage reported that Plaintiff's problem at the time he rendered his opinion was intractable diarrhea and her abdominal pain had improved.  Tr. 28, 806-07.  Dr. Bunnage specified it was because of Plaintiff's intractable diarrhea that Plaintiff would more probably than not miss an average of four of more days of work per month, yet the onset of intractable diarrhea was not until 2014.  Tr. 28.  Thus, Dr. Bunnage's opinion that Plaintiff had to lie down during the day due to intractable diarrhea since at least September 30, 2013 was not relevant to Plaintiff's limitations during the relevant time period.  Tr. 806.  Therefore, the ALJ reasonably found Dr. Bunnage's opinion was entitled to less weight because it was rendered outside the relevant period in this case.  Tr. 27-28.  This was a specific and legitimate reason to discredit Dr. Bunnage's opinion.

1         **b.**     Credit Reviewing Source Over Treating Source

2         Second, the ALJ discounted Dr. Bunnage's opinion because it was

3 inconsistent with the opinion of the reviewing medical expert, Dr. Humm, to

4 whose opinion the ALJ assigned significant weight. Tr. 26, 28. The opinion of a

5 nonexamining physician may serve as substantial evidence if it is supported by

6 other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1041.

7 Other cases have upheld the rejection of an examining or treating physician based

8 in part on the testimony of a nonexamining medical advisor when other reasons to

9 reject the opinions of examining and treating physicians exist independent of the

10 nonexamining doctor's opinion. *Lester*, 81 F.3d at 831. After comparing Dr.

11 Bunnage's opinion with Dr. Humm's opinion, and considering the entire record,

12 the Court concludes the ALJ's weighing of these two doctors' opinions is

13 supported by substantial evidence. As discussed *supra*, the ALJ noted that Dr.

14 Humm is a board-certified general surgeon who reviewed the entire medical record

15 relevant to her area of expertise. Tr. 26, 113. The ALJ determined that Dr.

16 Humm's opinion was consistent with the longitudinal record, which showed that

17 although Plaintiff did have a hernia during the relevant time period, the evidence

18 did not support the frequency and severity of pain alleged by Plaintiff. Tr. 26. Dr.

19 Humm's opinion is generally supported by Plaintiff's level of activities of daily

20 living during the relevant time period. Tr. 26-27.

The ALJ's finding that Dr. Bunnage's opinion merited less weight than Dr. Humm's opinion because Dr. Humm's opinion was a specific assessment of Plaintiff's functional capacity prior to the date last insured, is supported by substantial evidence. Tr. 28. It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews*, 53 F.3d at 1039. This was a specific and legitimate reason to credit Dr. Humm's opinion over Dr. Bunnage's opinion.

### 3. Dr. Chau

On March 31, 2011, consultative examiner, Wing C. Chau, M.D., completed a disability impairment evaluation of Plaintiff. Tr. 535-37. Dr. Chau did not consider Plaintiff's hernia or conduct an abdominal examination, and his opinion did not contain notes of subjective complaints related to Plaintiff's hernia. Tr. 27. Dr. Chau opined that Plaintiff was capable of performing her job as a bookkeeper unless she started to have worsening symptoms again, at which point she may need to be declared disabled due to stress-induced hypertension and congestive heart failure. Tr. 27 (citing Tr. 533-37).

The ALJ gave Dr. Chau's opinion little weight. Tr. 27. Because Dr. Chau's opinion was contradicted by the opinions of state agency psychological consultants, Cynthia Collingwood, Ph.D. and Patricia Kraft, Ph.D., and state agency medical consultant, Guillermo Rubio, M.D., who all reviewed records related to Plaintiff's chronic/congestive heart failure, diabetes, and hypertension

and concluded that there was insufficient evidence to determine Plaintiff's level of functioning during the relevant time period, Tr. 154-60, 162-69, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Chau's opinion. *Bayliss*, 427 F.3d at 1216.

a. Conclusory Opinion

First, the ALJ rejected Dr. Chau's opinion because he did not provide rationale in support of the limitations he opined. Tr. 27. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. Furthermore, an ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *See Morgan,* 169 F.3d at 601. Dr. Chau's opined limitations were vague, as he stated Plaintiff was able to perform the duties of a bookkeeper "except for associated stress of the job." Tr. 537. Dr. Chau provided no further explanation of his opinion about Plaintiff's capacity to work. Dr. Chau did not provide any function-by-function analysis of Plaintiff's limitations, nor did he offer an explanation as to what stress was present or what basis he had to conclude that Plaintiff's job was stressful to the point that it would impact her functioning. Tr.

27, 535-37. Dr. Chau failed to provide any rationale for his opinion being

equivocal, as he stated that if Plaintiff started to have worsening of symptoms, "she

*may* need to be declared disabled due to stress-induced hypertension and

congestive heart failure." Tr. 537 (emphasis added). Moreover, Dr. Chau failed to

explain the type of "worsening of symptoms" that would cause Plaintiff to possibly

be declared disabled. Tr. 537; *Morgan*, 169 F.3d at 601. The ALJ reasonably

discredited these findings as not sufficiently explained. Tr. 27. This was a specific

and legitimate reason to discredit Dr. Chau's opinion.

       b.    Inconsistent with Medical Evidence

Second, the ALJ concluded that Dr. Chau's opinion was inconsistent with

the evidence of record. Tr. 27. An ALJ may discredit physicians' opinions that

are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Here, the

ALJ noted that Dr. Chau's opinion that Plaintiff was limited by stress was not

supported by the medical evidence in the record, especially given the evidence of

effective use of Zoloft and the effective medical management for her cardiac

disease. Tr. 27; *see* Tr. 282, 426, 430 (August 2006 and March 2007: Plaintiff was

taking Zoloft antidepressant medication and despite this, she was able to engage in

work activity at the time, and even described her job as stressful); Tr. 421-22

(October 2008: Plaintiff required an increase in her Zoloft dosage); Tr. 536 (March

2011: Plaintiff presented at a consultative examination as alert and oriented with

intact cognition testing and ability to follow directions and speak well); Tr. 582

(October 2011: Plaintiff's depression was noted to be stable, and she continued

taking Zoloft); Tr. 566 (November 2012: Plaintiff's medication list showed Zoloft

at a reduced dosage level from October 2008); Tr. 563-66 (November 2012:

Plaintiff reported that her depression was stable, she denied any suicidal ideation,

anxiety, depression, memory impairment, or insomnia, and mental status

examination was normal); Tr. 567-72 (January 2014: Plaintiff's dysthymic disorder

was stable and mental status examination was again normal). Dr. Chau did not

perform any detailed mental status evaluation, and his physical examination of

Plaintiff was otherwise essentially benign. Tr. 535-37. Plaintiff did not testify as

to any symptoms or limitations from mental impairments at the administrative

hearing. Moreover, as the ALJ discussed throughout the decision, Plaintiff's

cardiac condition was managed well through a primary care clinic, her

hypertension was generally controlled, and her diabetes was asymptomatic during

the relevant time period. Tr. 27; Tr. 476 (Plaintiff's cardiac disorder and

hypertension were noted to be stable); Tr. 459 (November 2009: Plaintiff had been

doing "phenomenally well despite never having returned to see the cardiologist and

she had been "very much asymptomatic" with the clinic managing her medication

refills). Dr. Chau observed that Plaintiff was "actually fairly well managed" for

her cardiac condition at the primary care clinic. Tr. 537. Plaintiff did not testify as

to any particular symptoms secondary to diabetes or hypertension during the relevant time period. Inconsistencies between Dr. Chau's opinion and the medical evidence was a specific and legitimate reason to discount Dr. Chau's opinion.

In summary, Plaintiff failed to establish that the ALJ erred in weighing the medical evidence.

### D.    Lay Opinion Evidence

Plaintiff challenges the ALJ's treatment of statements provided by lay witness Lois DeFever, Plaintiff's landlady and longtime friend. ECF No. 17 at 14-15. Ms. DeFever provided a letter describing Plaintiff's limitations and outlining work that Plaintiff used to do around Ms. DeFever's property. Tr. 417-19. Although Ms. DeFever's letter was not dated, she did note that it was created for Plaintiff's administrative hearing on June 10, 2016. Tr. 417. Without indicating a specific timeframe, Ms. DeFever commented on the worsening of Plaintiff's "usual" diarrhea problems. Tr. 417-18. She noted that Plaintiff had stopped her work that involved heavy lifting approximately six years earlier. Tr. 418. She stated, "as the years passed [Plaintiff] was getting horrible hernia pains that I've never seen before until she could no longer help here." Tr. 418. Ms. DeFever also

mentioned Plaintiff's congestive heart failure and depression. Tr. 418-19. The ALJ gave little weight to Ms. DeFever's statements. Tr. 28.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony cannot establish the existence of medically determinable impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

### 1. Inconsistent with Plaintiff's Activities

First, the ALJ discounted Ms. DeFever's statements because they were inconsistent with an activity she noted that Plaintiff performed. Tr. 28. Inconsistency with a claimant's daily activities is a germane reason to reject lay testimony. *Carmickle*, 533 F.3d at 1163-64; *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ found that Ms. DeFever's report about Plaintiff's symptoms of horrible hernia pains was inconsistent with her report that Plaintiff reduced her

heavy lifting workload around 2010, as this indicated Plaintiff continued to do some law care and maintenance work on the property. Tr. 28, 418. This was a germane reason supported by substantial evidence to discount Ms. DeFever's statements.

### 2. Conflicts with Medical Evidence

Second, the ALJ discounted Ms. DeFever's statements because they were inconsistent with the medical evidence and the medical expert's evaluation of the nature and severity of Plaintiff's hernia. Tr. 28. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis*, 236 F.3d at 511-12 (germane reasons include inconsistency with medical evidence, activities, and reports). Although Ms. DeFever opined Plaintiff was "getting horrible hernia pains," as discussed *supra*, the ALJ found the longitudinal record revealed little clear evidence that a hernia was even causing major abdominal pain symptoms during the relevant time period, and the treatment notes prior to the date last insured did not support Plaintiff's allegations. Tr. 23, 28; *see* Tr. 575-85 (Plaintiff had primary care visits from January 2011 through February 2012, but she was not presenting frequently to the office for acute or severe symptoms); Tr. 561-62 (May 2012: upon presenting to the urgent care clinic due to abdominal hernia pain and a severe tooth abscess, Plaintiff reported she had been having abdominal pain for only the past five days); Tr. 561 (Plaintiff had a

hernia belt, which she wore "at times," but she was not wearing the belt when she presented to the urgent care clinic); Tr. 562 (May 2012: on examination, Plaintiff demonstrated a large bulge near the umbilicus with pain, which did reduce when lying flat); Tr. 563-65 (November 2012: at a primary care visit, Plaintiff reported low back and knee pain, but her last refill of hydrocodone narcotic pain medication had been at the beginning of the year, Plaintiff denied any abdominal pain or any other gastrointestinal symptoms, and an abdominal examination showed no distention and no abdominal tenderness); Tr. 567-72 (January 2014: Plaintiff re-established care with a primary care provider and did not report any hernia symptoms, examination revealed a large ventral hernia and her provider observed that the condition was stable, asymptomatic, and nonprogressive, and other abdominal findings were benign, including no abdominal distention). The medical expert reviewed the entire medical record and testified that although a hernia was detected in May 2012, it was not causing regular symptoms in that it did not need surgical intervention until September 2014. Tr. 116. The ALJ reasonably concluded that the medical record was inconsistent with Ms. DeFever's opinion. This was a germane reason to discredit Ms. DeFever's opinion.

### 3. *Outside Relevant Time Period*

Finally, Ms. DeFever's statements indicated that Plaintiff was limited due to her "usual diarrhea" problems, but the onset of intractable diarrhea did not begin

until 2014, after the date last insured. Tr. 28. Evidence from outside the relevant period in a case is of limited relevance. *Carmickle*, 533 F.3d at 1165. Ms. DeFever's letter was not dated, was provided in support of Plaintiff's administrative hearing in 2016, and failed to identify a specific time period for the existence of Plaintiff's limitations other than stating that Plaintiff stopped her heavy lifting work about six years earlier. Tr. 417-19. Ms. DeFever's reference to Plaintiff's limitations due to diarrhea provide further support that Ms. DeFever's statements pertained to a period after the date last insured, are thus are of limited relevance. *Carmickle*, 533 F.3d at 1165. It was reasonable for the ALJ to discount Ms. DeFever's statements because they were outside of the relevant time period. This was a germane reason to discredit Ms. DeFever's statements.

### E.    Steps Four and Five

Plaintiff challenges the ALJ's classification of her past relevant work. ECF No. 17 at 18. At the fourth step of the sequential evaluation process, the claimant has the burden "to prove that he cannot perform his prior relevant work either as actually performed or as generally performed in the national economy." *Carmickle*, 533 F.3d at 1166 (citing *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (internal quotation marks omitted)). Past relevant work is work that was "done within the last 15 years, lasted long enough for [claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). Substantial gainful

activity is work activity that "involves doing significant physical or mental activities" on a full-time or part-time basis, and "is the kind of work usually done for pay or profit." 20 C.F.R. § 404.1572. Generally, if a claimant works for substantial earnings as described in the regulations, the work is found to be substantial gainful activity. 20 C.F.R. § 404.1574(a)(1). Here, the ALJ determined that Plaintiff was capable of performing past relevant work as a bookkeeper, receptionist, and accounting clerk, which are all classified as sedentary exertion level jobs in the DOT. Tr. 28-29. Plaintiff argues the ALJ failed to conduct an adequate analysis at steps four and five of the sequential evaluation. ECF No. 17 at 18. However, the ALJ found that Plaintiff was capable of performing past relevant work at step four, and the analysis concluded without the need to proceed to step five. Tr. 28-29. For the reasons discussed below, the ALJ's step four analysis was proper, and thus, the ALJ did not err in concluding his analysis before continuing to step five.

### 1. Composite Jobs

Plaintiff argues that the ALJ erred by not classifying her past relevant jobs as composite jobs. ECF No. 17 at 18 (citing Program Operations Manual ("POMS") § DI 25005.020(B) and SSR 82-61). Where past relevant work consists of "significant elements of two or more occupations" (i.e., is a "composite job"), benefits may not be denied based on a claimant's ability to do the same type of

work as "generally performed." *Lee v. Astrue*, 2012 WL 3637637 (W.D. Wash. July 26, 2012); *see also* POMS § DI 25005.020(B) ("A composite job will not have a [Dictionary of Occupational Titles] counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'"). A "composite" job necessarily has no specific counterpart in the Dictionary of Occupational Titles, and thus must be evaluated "according to the particular facts of each individual case." SSR 82-61. A claimant may be found capable of performing such a composite job only if she is able to perform the requirements of all elements of the prior position. *Id.*; *see also* POMS § DI 25005.020(B). Here, Plaintiff argues that she performed composite jobs with significant elements of two or more occupations with no counterpart in the DOT, precluding past relevant work. ECF No. 17 at 19. Plaintiff asserts that she testified she performed a variety of tasks at each of her past jobs, including administrative functions, inventory tracking, bookkeeping, manual labor and installations, and various other tasks between departments. ECF No. 17 at 18 (citing Tr. 81-83). However, after questioning the vocational expert about whether Plaintiff's past relevant jobs were considered composite jobs, the ALJ made a finding that Plaintiff's past relevant jobs were not composite jobs. Tr. 98-100. The ALJ based his findings on Plaintiff's testimony that while working as an assistant bookkeeper, she cleaned the office "on the side" because she was "pretty

much the only one that would," Tr. 83, and that she would "go in on [her] time off, usually on the weekend" to vacuum and clean the office. Tr. 97-98. After hearing Plaintiff's testimony, the ALJ noted that cleaning the office was not part of her job duties, as she went in on her own time after hours to clean. Tr. 98-99. The vocational expert testified that although Plaintiff reported doing some freight receiving in one of her past jobs, that was not a significant component of the job, much like the janitorial duties described by Plaintiff. Tr. 82, 100. The ALJ reasonably determined that Plaintiff's past relevant work did not include composite jobs. Therefore, the ALJ did not err in this analysis at step four.

### 2. *Hypothetical Supported by Substantial Evidence*

Plaintiff contends the ALJ's step four finding was based on an improper RFC formulation and thus the ALJ presented an incomplete hypothetical to the vocational expert. ECF No. 17 at 19-20. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Magallanes*, 881 F.2d at 756-57; *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions

as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Id.* Here, Plaintiff's argument assumes the ALJ erred in evaluating the medical evidence. For reasons discussed throughout this decision, the ALJ's consideration of Plaintiff's symptom testimony and the medical opinion evidence was legally sufficient. Thus, the vocational expert's testimony was not based on an incomplete hypothetical, and the ALJ did not err in determining Plaintiff capable of performing past relevant work.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 21, is **GRANTED**.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED April 17, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 51